**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES BRASS
CORPORATION, now known as
ZURN PEX, INC., a Delaware
corporation,

        Plaintiff-Appellant,

  v.

DORMONT MANUFACTURING
COMPANY, a Pennsylvania
corporation,

        Defendant-Appellee.

No. 06-1197
(D.C. No. 05-CV-862-WYD-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

Plaintiff United States Brass Corporation (USB) appeals from the district

court's order granting summary judgment in favor of defendant Dormont

Manufacturing Company (Dormont) on USB's claims for contractual and common

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

law indemnity. The district court's jurisdiction arose under 28 U.S.C. § 1332(a), and our jurisdiction is pursuant to 28 U.S.C. § 1291. We affirm the summary judgment order concerning the contractual indemnity for the same reason as the district court, and also affirm summary judgment on the common law indemnity claim, but for a different reason.

# I

## Background

USB sued Dormont for contractual and common law indemnity for money it paid in a pre-trial settlement to Claire Long and Allstate Insurance Company (Allstate) in their lawsuit in which they alleged personal injury and property damage arising from an explosion at a home in Nederland, Colorado. Dormont also settled with Ms. Long and Allstate prior to trial. According to USB, the explosion was caused by a defect in a stainless steel nut-by-nut connector (flex connector) manufactured by Dormont and distributed by USB, which allowed propane to leak and then ignite when Ms. Long turned on a vacuum cleaner.

As to USB's claim for contractual indemnity, the district court concluded that the parties' purchase agreement did not clearly and unambiguously demonstrate an intent to indemnify.[1] With respect to the common law indemnity claim, the court concluded that because USB was sued as a joint tortfeasor,

---

[1]    Dormont filed a motion to dismiss, which the district court converted to a motion for summary judgment.

Colorado's Uniform Contribution Among Tortfeasors Act (the Act), Colo. Rev. Stat. § 13-50.5-101, *et seq.*, precluded its claim.

## II

## Standard of Review

> We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citations omitted).

Further, "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotations omitted).

## III

## Contractual Indemnity

The parties' purchase agreement required Dormont, among other things, to manufacture the flex connectors and stamp them with USB's name. Relevant here, the agreement stated: "Quality control procedures will be agreed upon and documented. Defective product to be returned [to Dormont] and credited upon

mutual agreement of cause. Dormont Manufacturing accepts all obligations associated with being the manufacturer of the product." Aplt. App. at 10. USB claims that Dormont's willingness to "accept all obligations associated with being the manufacturer" of the flex connectors created an indemnity contract.

Colorado substantive law applies in this diversity case. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998) (holding that "[a] federal court sitting in diversity must apply the law of the forum state."). Under Colorado law, the inquiry is whether the intent to indemnify was expressed clearly and unambiguously in the purchase agreement. *Pub. Serv. Co. of Colo. v. United Cable Television of Jeffco, Inc.,* 829 P.2d 1280, 1284 (Colo. 1992). While it is true that the parties do not need to use the words "indemnity" or "indemnify," *Williams v. White Mountain Constr. Co.,* 749 P.2d 423, 426 (Colo. 1988), we agree with Dormont that the sentence "Dormont . . . accepts all obligations associated with being the manufacturer of the product," could have different meanings when considered in the context of the paragraph in which it appears, and therefore does not clearly and unambiguously express an intention to indemnify. Nor does the purchase agreement contain any language the Colorado courts have found adequate to manifest an intention to indemnify, such as (1) a provision requiring Dormont to hold USB harmless from and against claims, liabilities, causes of action, legal proceedings, or costs of defense or (2) a clause requiring Dormont to maintain general liability insurance. *See e.g., Pub. Serv.*

-4-

*Co. of Colo.*, 829 P.2d at 1283; *see also Williams*, 749 P.2d at 426 (reasoning that although "it is inappropriate to construe statements so narrowly as to deprive them of any meaning, yet the burden of indemnity is so onerous that we hesitate to impose it unless the language used requires such a result.").

We also reject USB's argument that disputed facts concerning its intent precluded summary judgment.

> Interpretation of a written contract is generally a question of law for the court. . . . It is only where the terms of an agreement are ambiguous or are used in some special or technical sense not apparent from the contractual document itself that the court may look beyond the four corners of the agreement in order to determine the meaning intended by the parties. It is axiomatic that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence.
>
> Whether an ambiguity exists is also a question of law. When an ambiguity is found to exist and cannot be resolved by reference to other contractual provisions, extrinsic evidence must be considered by the trial court in order to determine the mutual intent of the parties at the time of contracting.

*Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313-14 (Colo. 1984) (citations omitted). Therefore, extrinsic evidence of intent is not admissible in a case where the court properly determines as a matter of law that an agreement is unambiguous. *Cf. Jones v. Dressel*, 623 P.2d 370, 376, 378 (Colo. 1981) (holding that whether an exculpatory agreement is valid is a question of law, including whether the agreement expresses the parties' intention in clear and unambiguous language).

The district court's conclusion that the purchase agreement did not create an indemnity contract was correct as a matter of Colorado law and there were no material facts in dispute. Thus, we affirm the court's order for summary judgment in favor of Dormont on USB's claim for contractual indemnity.

## IV

## Common Law Indemnity

Again, we apply controlling state law in this diversity case. *Blanke*, 152 F.3d at 1228. In *Brochner v. Western Ins. Co.,* 724 P.2d 1293, 1298 n.6 (Colo. 1986), the Colorado Supreme Court stated that it was reserving judgment as to the viability of an indemnity claim "in situations where the party seeking indemnity is vicariously liable or is without fault." USB argues that the majority of courts that have addressed the issue have recognized a right of indemnity by a downstream defendant in a products liability case against the manufacturer of the defective product, and the only reason why the "Colorado appellate courts have not recognized this exception because they have not yet addressed it." Aplt. Reply Br. at 7.

For its part, Dormont argues that the only exception recognized thus far by the Colorado courts is where a party sued as a joint tortfeasor is not negligent (at fault), but is liable only under a theory of vicarious liability, such as an employer/employee or principal/agent relationship. *Serna v. Kingston Enterprises*, 72 P.3d 376, 380 (Colo. App. 2003); *Johnson Realty v. Bender*,

-6-

39 P.3d 1215, 1218 (Colo. App. 2001). The district court agreed with Dormont and held that because USB had not been sued as a joint tortfeasor under a theory of vicarious liability, it could not state a claim for indemnity under Colorado law.

The linchpin of USB's argument is the Restatement (Second) of Torts § 886B (1979), which was cited by the Colorado Supreme Court in *Brochner*, 724 P.2d 1298 n.5, to explain the tension between claims for common law indemnity and statutory provisions for contribution. According to USB, it has a right of indemnification because "[Dormont] supplied a defective chattel . . . as a result of which both [USB and Dormont] were liable to the third person, and [USB] innocently or negligently failed to discover the defect." Restatement (Second) of Torts § 886B(2)(d) (1979).

While we agree that the principle set forth in § 886B appears to be what the Colorado Supreme Court had in mind when it reserved judgment as to the viability of an indemnity claim in situations where the party seeking indemnity is without fault, USB cannot state an indemnity claim for a different reason. Section 886B has been replaced by the Restatement (Third) of Torts: Apportionment of Liability § 22 (2000). More to the point, to obtain indemnity under either §§ 886B or 22, USB was required, among others things, to have discharged Dormont's liability.

> (1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled

to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

Restatement (Second) of Torts § 886B(1) (1979).

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses. . . .

Restatement (Third) of Torts: Apportionment of Liability § 22(a) (2000).

The Restatement further explains that

> [e]xcept when a contract for indemnity provides otherwise . . . an indemnitee must extinguish the liability of the indemnitor to collect indemnity. The indemnitee may do so either by a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or by satisfaction of judgment that by operation of law discharges the indemnitor from liability.

*Id.*, § 22 cmt. b.

USB admits that it did not extinguish Dormont's liability when it settled with Ms. Long and Allstate because Dormont thereafter entered into its own settlement agreement: "USB settled with Ms. Long before trial . . . and with Allstate . . . . Dormont also settled with the underlying plaintiffs." Aplt. Br. at 3. Further, although USB alleges that it "settled in good faith" with Ms. Long and Allstate, Aplt. App. at 24, the amended complaint is devoid of any allegation that this settlement extinguished Dormont's liability. Therefore, even if USB was without fault, its settlement did not extinguish Dormont's liability and it cannot recover in indemnity. *AVCP Reg'l Hous. Auth. v. R.A. Vranckaert Co., Inc.*,

-8-

47 P.3d 650, 657-59 (Alaska 2002) (applying Restatement (Third) of Torts: Apportionment of Liability § 22(a) (2000)); *Moore Excavating, Inc. v. Consolidated Supply Co.*, 63 P.3d 592, 595-96 (Or. App. 2003) (same).

Therefore, we affirm the district court's order for summary judgment in favor of Dormont on USB's claim for common law indemnity, albeit for a different reason.

The judgment of the district court is AFFIRMED.


Entered for the Court


Michael R. Murphy
Circuit Judge